**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIAM MOEINZADEH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: _____ |
| ) | |
| v. ) | Judge: _____ |
| ) | |
| AZRA SHAFI-SCAGLIARINI a/k/a ) | |
| AZRA ZYNEB SHAFI-SCHELIERINI, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

Plaintiff, MARIAM MOEINZADEH, (hereinafter "Moeinzadeh"), by and through her attorneys, Hart McLaughlin & Eldridge, LLC, complaining against Defendant AZRA SHAFI-SCAGLIARINI a/k/a AZRA ZYNEB SHAFI-SCHELIERINI, (hereinafter "Azra"), states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Mariam Moeinzadeh is a citizen of Chicago, Illinois.

2. Defendant Azra Shafi-Scagliarini a/k/a Azra Zyneb Shafi-Schelierini is a citizen of Edgewater, New Jersey.

3. There is complete diversity of citizenship between Plaintiff and Defendant.

4. The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

5. Pursuant to 28 U.S.C. § 1332, the district court has original jurisdiction of this civil action where the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

1

6. Venue is proper in this jurisdictional district as a substantial part of the events giving rise to this lawsuit occurred in this judicial district, including contract negotiations and agreements and the transfers of funds from Plaintiff to Defendant originating in Illinois.

7. In or around December 22, 2024, Moeinzadeh and Azra entered into an agreement and contract whereby Azra would provide "life coaching" to Moeinzadeh's son Kaveh Moeinzadeh ("Kaveh") for a period of six months, in exchange for $91,950.00.

8. By January 9, 2025, Moeinzadeh paid Azra the total $91,950.00 as agreed pursuant to the contract.

9. However, after receiving the $91,950.00, Azra failed to provide the life coaching services to Kaveh as agreed.

10. By February 3, 2025, Azra admitted to Moeinzadeh that Azra had the legal obligation to give Moeinzadeh a 100% full refund of the $91,950.00 paid to Azra by Moeinzadeh.

11. Azra confirmed to Moeinzadeh on several occasions, including in writing, that "I do not contest that I owe you the $91,950 that you paid me."

12. On February 3, 2025, or thereabouts, Azra offered a full refund of $91,950.00 to Moeinzadeh and Moeinzadeh accepted Azra's offer for a full refund of $91,950.00.

13. A material term of the 100% refund agreement and contract was that Azra agreed to refund Moeinzadeh the full $91,950.00 in installments, to be paid in full within two weeks, by no later than February 26, 2025, the same time it took Moeinzadeh to pay Azra the $91,950.00.

14. In further breach of the parties' agreement and contract, to date Azra has failed to refund one penny of the $91,950.00 she does not dispute she owes to Moeinzadeh.

**FACTUAL ALLEGATIONS**

2

**Who is Azra?**

15. Azra Shafi-Schelierini a/k/a Azra Zynab Shafi-Schelierini, is "a self-styled life coach and spiritual advisor," and is "known for her work with athletes and celebrities."[1]

16. Azra is described as a "psychic to the stars" by some media outlets.

17. News sources, including one article in the *Intelligencer* titled, "Celebrity Psychic Azra Shafi-Schelierini Jailed," indicates that Azra served a sentence on Riker's Island for grand larceny.[2]

18. Court records allegedly show that Azra was arrested for stealing "property" from Signature Bank.[3]

19. Another article states, "A so-called psychic to the stars with several Yankees as clients didn't foresee that pulling off a string of scams would land her behind bars."[4]

20. "She's a pure con artist," said George Giotsas, a Connecticut caterer who claims Azra bilked him out of $10,000 by ordering a huge barbecue spread to Yankee Stadium — even though Azra lied about working for the team.[5]

21. Azra was "tossed in the clink in July [2009] for failing to pay restitution on a 2004 check scam."[6]

22. Bergen County New Jersey prosecutor Pia Perez said Azara "wrote 80 bad checks totaling $96,000 to New Jersey banks and businesses over a two-year period ending in 2005."[7]

---

[1] https://www.google.com/search?q=azra+zynab+shafi-schelierini&oq=azra&gs_lcrp=EgZjaHJvbWUqBggDECMYJzIGCAAQRRg5MhIIARAuGEMYgwEYsQMYgAQYigUyCggCEC4YsQMYgAQyBggDECMYJzIGCAQQRRg7Mg0IBRAAGIMBGLEDGIAEMgwIBhAAGEMYgAQYigUyBggHEEUYPNIBCDM3MTRqMGo3qAIAsAIA&sourceid=chrome&ie=UTF-8
[2] https://nymag.com/intelligencer/2009/09/sports_psychic_azra_shafi-sche.html
[3] Id.
[4] https://nypost.com/2009/09/20/yank-guru-psych-out-in-prison/
[5] Id.
[6] Id.
[7] https://www.nydailynews.com/2006/03/05/the-psychic-connection-latest-sports-craze-has-guru-helping-athletes-see-the-light/

3

23. Azra was also featured in the article, "Money Burnin' in Vernon: Someone else has a gripe with Giambi's Guru."[8]

**Moeinzadeh, Kaveh and Azra Meet**

24. On December 22, 2024, Moeinzadeh, along with her son Kaveh, met with Azra in Kaveh's apartment in New York.

25. Azra explained to Moeinzadeh and Kaveh that Azra helps clients with personal issues, including emotional issues – that in essence Azra is a life coach of sorts – and that Azra could help Kaveh with such issues and even help him to secure employment.

26. As part of her sales pitch, Azra introduced Moeinzadeh and Kaveh to a gentleman Azra represented to be former National Hockey League player Milan Lucic.

27. Below is a photograph of the Mr. Lucic (with a gift in hand) introduced by Azra to Moeinzadeh and Kaveh taken from Kaveh's Ring camera outside his apartment door on December 22, 2024, at approximately 1:57 p.m. EST:

---

[8] https://cantstopthebleeding.com/money-burnin-in-vernon-someone-else-has-a-gripe-with-giambis-guru

4



28. During the meeting, as part of Azra's sales pitch, she had Mr. Lucic explain that Azra was helping Mr. Lucic with various personal issues and challenges and that Azra could do the same for Kaveh.

29. Azra used Milan Lucic as a tool to establish credibility with Kaveh and Moeinzadeh and to fraudulently induce Moeinzadeh to pay her $91,950.00.

30. After the meeting, Azra sent a text message to Kaveh, referencing "Milan" the "professional hockey player" for whom Azra allegedly provided life coaching:



31. Azra even told Kaveh that Milan Lucic, a professional athlete, would himself give Kaveh encouragement and support throughout Azra's work on behalf of Kaveh.

32. Azra again used Milan Lucic as a tool to establish credibility with Kaveh and Moeinzadeh and to fraudulently induce Moeinzadeh to pay her $91,950.00.

33. By saying "God is so good!" Azra was using religion to fraudulently induce Moeinzadeh to pay her $91,950.00.

34. Once Moeinzadeh paid Azra $91,950.00, Kaveh never heard from or saw Milan Lucic ever again.

35. The result of the December 22, 2024 meeting was that Moeinzadeh and Azra entered into an agreement and contract that in exchange for Moeinzadeh paying Azra $91,950.00, Azra would make herself available "around the clock," for a term of six months, to provide life coaching and support to Kaveh.

36. But Azra told Moeinzadeh that she would not start working with Kaveh until Moeinzadeh paid Azra the entire $91,950.00 up front.

**Moeinzadeh Pays Azra $91,950.00**

37. The very next day after the meeting, Moeinzadeh started paying Azra the $91,950.00 as agreed.

38. For reasons unknown, Azra asked Moeinzadeh to pay the $91,950.00 in several installments and for uneven dollar amounts.

39. Azra claimed that she wanted Moeinzadeh to send the money in "odd" dollar amounts so that Azra could identify who was sending her particular payments.

40. On December 23, 2024, Moeinzadeh sent the first payment to Azra via personal check in the amount of $11,717.17.

41. Azra allegedly was having issues with her checking account, so she asked Moeinzadeh to deliver the check to her home address at 712 Undercliff Avenue, Edgewater, New Jersey 07020-1453, via Uber package delivery service which Moeinzadeh did.

42. Between December 23, 2024 and December 26, 2024 Azra repeatedly called Moeinzadeh asking for the full $91,950.00 to be paid immediately, claiming that Kaveh would be more cooperative in his treatment sessions with Azra if Kaveh knew $91,950.00 had already been paid for Azra's services.

43. Moeinzadeh offered to send money to Azra via Zelle, but Azra claimed her Zelle account (registered as "LADY SCAGLIARINI") was not operational.

44. Azra then asked Moeinzadeh to Zelle the money to Milan Lucic, leading Moeinzadeh to believe that Mr. Lucic is Azra's business partner.

45. Moeinzadeh refused to send the money to Milan Lucic because Moeinzadeh's contract was with Azra, not Milan Lucic.

7

46. On December 26, 2024, Azra sent bank wiring instructions to Moeinzadeh for the future payments.

47. Azra told Moeinzadeh, "the [first] check is going to take 6-10 BUSINESS days to clear and there are things I need to put in place asap Please send balance by wire to these instructions today..."

48. Moeinzadeh told Azra that despite Azra's false representation that the first check would take "6-10 BUSINESS days to clear," the check had already cleared Moeinzadeh's bank, and the funds were withdrawn from Moeinzadeh's account several days earlier on December 24, 2024.

49. Azra also told Moeinzadeh "I've already paid out $20k ($20,000.00)" "You had said you would do the balance [of $91,950.00] and [I] hired others based on that."

50. Moeinzadeh has no knowledge of who Azra would have paid $20,000.00 with Moeinzadeh's money.

51. Moeinzadeh was not told by Azra that Azra would pay anyone else with Moeinzadeh's money and Moeinzadeh did not consent to allow Azra to pay anyone else with Moeinzadeh's money.

52. On December 26, 2024, Moeinzadeh ACH wire transferred $1,111.00 to Azra.

53. On December 27, 2024, Moeinzadeh ACH wire transferred $18,889.00 to Azra.

54. On December 27, 2024, Moeinzadeh also ACH wire transferred $8,282.83 to Azra.

55. On January 2, 2025, Moeinzadeh ACH wire transferred $19,950.00 to Azra.

56. On January 9, 2025, Moeinzadeh ACH wire transferred $32,000.00 to Azra.

57. With the final ACH wire transfer of $32,000.00 on January 9, 2025, Moeinzadeh had paid the total agreed contract amount of $91,950.00.

58. Azara admits she received the total $91,950.00 contract price.

**With Money Now in Hand - Azra "Ghosts" Kaveh and Performs no Services for Kaveh**

59. Once Azra got her hands on the $91,950.00, her communication with Moeinzadeh and Kaveh became sporadic and strange – she offered the classic fraudster excuses as to why she was unable to communicate with Kaveh and could not perform any meaningful work on Kaveh's behalf.

60. On January 13, 2025, a mere four days after Azra was paid $91,950.00, Kaveh was already unable to get Azra to communicate with him:



61. On January 20, 2025, Azra claimed a time zone change, an airline flight, and a new medication was to blame for her failure to communicate with Kaveh:

62. On January 23, 2025, Kaveh was trying to reach Azra on her cell phone and Kaveh received a strange text message – from Azra's cell phone – allegedly from Azra's son, "Adam Scagliarini":

9



63.  Azra never explained why her adult son had apparently taken her cell phone to communicate with her client Kaveh without advance notice or Kaveh's consent.

64.  On another occasion on January 25, 2025, Azra sent a cryptic text message to Kaveh about absorbing negative energy sent to Kaveh and the need to discuss something Azra apparently considered to be devious, in person:



65.  In response to Azra's nonsensical text message, Kaveh told Azra he was not following whatever she was trying to say to him, and he did not even understand what Azra was doing on his behalf.

10

66. The January 25, 2025, text message was not the only time Azra claimed to have the otherworldly power to "absorb" energy on behalf of her clients:



67. On January 27, 2025, Azra sent more text messages to Kaveh making absolutely no sense, leaving Kaveh dumbfounded with Kaveh replying "What are you even saying …..":

68. By January 28, 2025, Moeinzadeh complained to Azra that Moeinzadeh and Kaveh were "hardly able to get a hold of you [Azra]."

69. When Azra did choose to reply to Kaveh and Moeinzadeh, Azra offered more excuses right out of the "Fraud 101" Playbook: family sickness, the L.A. wildfires, doctor's visits, heavy medication/sedative use, personal and business travel, airline troubles, and even the January 29, 2025 Potomac River mid-air plane crash, as phony reasons why Azra could not find the time to meet in person with Kaveh, let alone timely text or call Kaveh to provide the life coaching services contracted and paid for.

70. For example, on January 31, 2025, Azra texted Kaveh:

11



71. On February 2, 2025, Kaveh again tried to reach Azra several times with no success, causing Kaveh to complain to Azra that she was "ghosting" him:



72. Azra then complained again of being nauseous as an excuse for her failure to communicate with Kaveh as she was paid to do:

12



73. Azra even claimed she could not talk to Kaveh because she was preoccupied locating a phone charger for an unreasonably lengthy period of time:



74. By early February 2025, Azra's fraudulent scheme was clear – Moeinzadeh and Kaveh realized Azra had taken the $91,950.00 with no intention of ever performing the life coaching services to Kaveh as Azra agreed and was paid for.

75. When Azra offered more excuses, Kaveh told Azra he had had enough:

> You are not going to be buying yourself yet another day of no action  2:16 PM

76. On February 3, 2025, during a phone call, Moeinzadeh and Azra agreed that because Azra failed to perform any services to Kaveh as agreed, that Azra would completely refund the $91,950.00 paid to her by Moeinzadeh.

77. Azra offered, and Moeinzadeh accepted Azra's offer, of a complete refund of the $91,950.00 contract price in installments, to be paid by a deadline of two weeks, the same time it took Moeinzadeh to pay Azra, by no later than February 26, 2025.

78. Azra asked Moeinzadeh for her wiring instructions so Azra could send Moeinzadeh the full refund of the $91,950.00.

79. Azra fraudulently asked Moeinzadeh for her wiring instructions even though Azra knew she either did not have the $91,950.00 she had received from Moeinzadeh only a month prior, or she had no intention to pay the money back to Moeinzadeh.

80. On February 19, 2025, Azra told Moeinzadeh that Azra retained an attorney named "Halim Dhanidina" to draft a written agreement memorializing the agreement already in place that Azra would completely refund Moeinzadeh's $91,950.00 by February 26, 2025.

81. That same day, Azra sent a group text message to Moeinzadeh and allegedly including Attorney Halim Dhanidina, referencing the "full refund" Azra agreed to give Moeinzadeh:

> Halim Dhanidina please say hello to Miriam
> She is the woman I need to get the refund to for the client and I can no longer due that I told you I owe the full refund to please let me know when you can speak thus am so we can resolve asap and seemly.
> I do not wish to cause her anymore stress.

82. That same day, Moeinzadeh then received a text message allegedly from Attorney Halim Dhanidina:

> Good morning Mariam! This is Halim Dhanidina. Pleased to meet you. If you send me your email address, I will get something out to you today. I will be traveling this afternoon so it would either be around lunchtime or later this evening. Talk to you soon.

83. Attorney Halim Dhanidina was then contacted via his published work email address: hdhanidina@signatureresolution.com regarding his alleged representation of Azra.

84. Halim Dhanidina, a retired California state court judge replied in an e-mail, acknowledging that he knows Azra, but denying that he is representing Azra:

> "Sorry for the confusion but **I don't represent Azra** or anyone else for that matter since I am a retired judge and not a practicing attorney."
> - Hon. Halim Dhanidina (Ret.)."

85. When Azra was confronted with this damning information she offered more phony excuses.

86. It appears, therefore, upon information and belief, that Azra, possibly with accomplices and co-conspirators, impersonated a judge by sending a fictitious text message purported to be from retired Judge Halim Dhanidina acting as Azra's attorney.

87. Later that day on February 19, 2025, Azra texted Moeinzadeh "…I do not contest that I owe you the $91,950 that you paid me…" since Azra failed to perform any services to Kaveh as she contracted to do and was paid for:

15

> situation to you, but I do not contest that I owe you the $91,950 that you paid me and I intend to have the money refunded to you as soon as possible.

> I fully recognize that you are entitled to the return of your payments and it is my priority to make a complete refund. Due to

> the above sum. Due to my obligations to my mother and my own devoting health , it became apparent that I would not be able to satisfy your requirements for me so our engagement ended. I am unable to work at this time with any clients at all not just Kaveh.

88. To further stall and to try to buy herself more time – a prototypical fraudster stunt – Azra then told Moeinzadeh in a text message that she would make the first refund payment of $11,717.17 towards the $91,950.00 total "tomorrow":

16

> I'm sending first payment tomorrow

89. Azra fraudulently told Moeinzadeh she would make the first payment of $11,717.17 "tomorrow," even though Azra knew she had no intention to make the payment.

90. Indeed, Azra did not make the first payment of $11,717.17 on February 20, 2025 as promised.

91. And to date, Azra has failed to refund one penny to Moeinzadeh.

## Count I
## Declaratory Judgment – 28 U.S.C.A. § 2201

92. Moeinzadeh hereby re-alleges and incorporates paragraphs 1 through 91 of this Complaint as though they were fully set forth herein.

93. This Count is brought pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201, which provides in part as follows:

> (a) In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

94. There is an actual controversy between Moeinzadeh and Azra.

95. Prior to the filing of this action, Moeinzadeh and Azra reached an agreement that Azra would refund $91,950.00 to Plaintiff by no later than February 26, 2025.

96. The "full refund of $91,950.00" agreement is memorialized in writing multiple times.

97. To date, April 4, 2025, Azra has failed to refund one penny of the $91,950.00 as agreed.

98. Azra is in breach of her agreement with Moeinzadeh to refund $91,950.00 to Moeinzadeh.

99. Thus, there is an actual controversy between Moeinzadeh and Azra which is substantial, definite and concrete.

100. The actual controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

WHEREFORE, Plaintiff MARIAM MOEINZADEH prays for judgment against Defendant AZRA SHAFI-SCAGLIARINI a/k/a AZRA ZYNEB SHAFI-SCHELIERINI as follows:

    A. Declaration that Defendant Azra Shafi-Scagliarini a/k/a Azra Zyneb Shafi-Schelierini owes Plaintiff Mariam Moeinzadeh $91,950.00;

    B. Award of reasonable attorneys' fees and costs in favor of Plaintiff Mariam Moeinzadeh;

    C. Award of interest in favor of Plaintiff Mariam Moeinzadeh; and/or

    D. Such other and further relief as this Court deems just and proper.

### Count II
### Fraud

101. Moeinzadeh hereby re-alleges and incorporates paragraphs 1 through 100 of this Complaint as though they were fully set forth herein.

102. Azra made a false statement of material fact to Moeinzadeh, in particular that in exchange for Moeinzadeh paying Azra $91,950.00, Azra would make herself available "around the clock," for a term of six months, to provide life coaching and support to Kaveh.

103. At the time Azra made the false statement of material fact to Moeinzadeh, that in exchange for Moeinzadeh paying Azra $91,950.00, Azra would make herself available "around the clock," for a term of six months, to provide life coaching and support to Kaveh, Azra knew the statement was false.

104. Azra made the false statement of material fact to Moeinzadeh, that in exchange for Moeinzadeh paying Azra $91,950.00, Azra would make herself available "around the clock," for a term of six months, to provide life coaching and support to Kaveh, with the intent that Moeinzadeh would rely on the false statement and pay Azra $91,950.00.

105. Moeinzadeh reasonably relied on Azra's statement of material fact to Moeinzadeh, that in exchange for Moeinzadeh paying Azra $91,950.00, Azra would make herself available "around the clock," for a term of six months, to provide life coaching and support to Kaveh.

106. Azra does not dispute that she owes Moeinzadeh a 100% full refund of the $91,950.00 Moeinzadeh paid to Azra.

107. Thus, there is no dispute that Moeinzadeh's damages include the $91,950.00 she paid to Azra.

WHEREFORE, Plaintiff MARIAM MOEINZADEH prays for judgment against Defendant AZRA SHAFI-SCAGLIARINI a/k/a AZRA ZYNEB SHAFI-SCHELIERINI as follows:

A. Declaration that Defendant Azra Shafi-Scagliarini a/k/a Azra Zyneb Shafi-Schelierini owes Plaintiff Mariam Moeinzadeh $91,950.00;

B. Award of reasonable attorneys' fees and costs in favor of Plaintiff Mariam Moeinzadeh;

C. Award of interest in favor of Plaintiff Mariam Moeinzadeh;

D. Punitive damages; and/or

E. Such other and further relief as this Court deems just and proper.

Dated: April 4, 2025      Hart McLaughlin & Eldridge, LLC
                          (Attorneys for Plaintiff)

                          By: /s/ Robert J. McLaughlin

                                              Robert J. McLaughlin, Esq.
                                              rmclaughlin@hmelegal.com
                                              ARDC #6272701
                                              Hart McLaughlin & Eldridge, LLC
                                              One South Dearborn, Suite 1400
                                              Chicago, Illinois 60603
                                              Tel:    312-955-0545